UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. _____

STILES CORPORATION, d/b/a STILES
CONSTRUCTION COMPANY,

      Plaintiff,

vs.

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY, a foreign
corporation, UNITED STATES FIRE
INSURANCE COMPANY, a foreign
corporation.

      Defendants.

_____/

FILED by ___ ЄⱣ D.C.

FEB 1 1 2010

STEVEN M. LARIMORE
CLERK U S DIST CT
S. D. of FLA. – MIAMI

## **NOTICE OF REMOVAL**

     Defendants, CRUM & FORSTER SPECIALTY INSURANCE COMPANY ("Crum &

Forster Specialty") and UNITED STATES FIRE INSURANCE COMPANY ("U.S. Fire"),

collectively referred to as "Defendants", by and through undersigned counsel, hereby file this

Notice of Removal from the Circuit Court for the Seventeenth Judicial Circuit, in and for

Broward County, Florida, Case No. CA10 02468, to the United States District Court for the

Southern District of Florida, Fort Lauderdale Division, and respectfully show this Court the

following:

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAYVIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\100126_0001\C53.E070

## I. STATEMENT OF THE GROUNDS FOR REMOVAL

1.    This removal is based on diversity of citizenship with the amount in controversy exceeding the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

2.    This action may be removed to this Court by Defendants, Crum & Forster Specialty and U.S. Fire, pursuant to Sections 1332, 1441 and 1446 of Title 28 of the United States Code.

3.    28 U.S.C. § 1332 provides, in pertinent part:

> (a)    The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between
>
> (1)    citizens of different States;
>
> (2)    citizens of a different State and citizens or subjects of a foreign state;
>
> (3)    citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> (4)    a foreign state, defined in Section 1603(a) of this title, as plaintiff and citizens of a State or of different States. *Id.*

4.    28 U.S. C. § 1441 provides, in pertinent part:

> (b)    Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought. *Id*

2

5.     28 U.S.C. § 1446 provides, in pertinent part:

> (a)     A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action. *Id.*

> (b)     The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. *Id.*

6.     In order for this Court to have subject matter jurisdiction over this matter and the Defendants to properly remove the pending State court action to this Court, all of the following conditions must be met:

        a.     Complete diversity of citizenship between the parties;

        b.     The amount in controversy must be in excess of $75,000.00;

        c.     The notice of removal must comply with the statutory procedures in 28 U.S.C. § 1446.

## II. STATEMENTS APPLICABLE TO REMOVAL UNDER DIVERSITY JURISDICTION

7.     A civil action was commenced in the Seventeenth Judicial Circuit in and for Broward County, Florida, styled, *Stiles Corporation, d/b/a Stiles Construction Company, v. Crum & Forster Specialty Insurance Company, a foreign corporation; United States Fire Insurance Company, a foreign corporation,* Case No. CA10 02468.

3

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAYVIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130  •  TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\100126_0001\C53.E070

8.     The Plaintiff filed this action in the State court on January 22, 2010, and Defendants, Crum & Forster Specialty and U.S. Fire, first received formal notice of this action on January 26, 2010, when it was transmitted electronically by the Florida Department of Financial Services to them, including the Summons, a copy of the Complaint and Plaintiff's First Request for Production of Documents to Crum & Forster Specialty Insurance Company. (*See* Notices of Service of Process attached hereto as composite Exhibit "A".)

9.     The Complaint is a declaratory and breach of contract action for monetary losses associated with attorneys fees incurred in the defense of Stiles Corporation d/b/a Stiles Construction Company against claims by Costa Dorada Associates, Ltd. for alleged defects and deficiencies in the performance of work by Stiles' subcontractors at the project known as Q-Club Resort and Residences, in Fort Lauderdale, Florida. (*See* Complaint attached hereto within composite Exhibit "B".)

10.     The allegations of the Complaint include damages of approximately $632,018.92 that Stiles incurred "in the defense of Costa Dorada's claims for which it seeks to recover in this Action." (*See* Complaint at ¶ 18.)

11.     Defendants, Crum & Forster Specialty and U.S. Fire, seek removal to the Southern District of Florida, Fort Lauderdale Division, the district in which the action is now pending.

12.     Undersigned counsel represents both Defendants and the Rule of Unanimity is complied with as all Defendants consent to removal.

13.     Following the filing of this Notice with this Court, written notice of the filing of same will be provided to the Plaintiff as is required by law.

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAYVIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\100126_0001\C53.E070

14.     Following the filing of this Notice with this Court, a true and correct copy of the same will be filed with the Clerk of the Seventeen Judicial Circuit in and for Broward County, Florida, as is required by law.  (*See* Exhibit "C".)

15.     Pursuant to Section 1446(a) of Title 28 of the United States Code, true and correct copies of all process, pleadings, orders and other papers or exhibits served in this action in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida are attached hereto as Composite Exhibit "D".

16.     No previous application for relief sought herein has been made to this Court or any other Court.

### III. DIVERSITY OF PARTIES

17.     One of the two requirements that must be met for this Court to exercise diversity jurisdiction is that the Plaintiff and the Defendants may not be of the same citizenship – commonly known as the "complete diversity" requirement.  28 U.S.C. § 1332(a), *Wisconsin Dept. of Corrections v. Schacht*, 118 S.Ct. 2047 (1998).

18.     Defendant, Crum & Forster Specialty Insurance Company is an Arizona corporation with its principal place of business in New Jersey.  Crum and Forster Specialty is thus a citizen of Arizona and New Jersey.

19.     Defendant, United States Fire Insurance Company is a Delaware Corporation with its principal place of business in New Jersey.  U.S. Fire is thus a citizen of Delaware and New Jersey.

20.     Plaintiff, Stiles Corporation, d/b/a Stiles Construction Company is a Florida corporation doing business in Florida.  Stiles Construction Company is thus a citizen of Florida.  (*See* Complaint at ¶ 2.)

5

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAYVIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130  •  TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\100126_0001\C53.E070

21.    Accordingly, there is complete diversity.  28 U.S.C. § 1332(a)(1).

### IV. AMOUNT IN CONTROVERSY

22.    The second requirement that must be met for this Court to exercise diversity jurisdiction is that the amount in controversy must exceed $75,000.00.  28 U.S.C. § 1332(a).

23.    The allegations of the Complaint include damages Plaintiff, as General Contractor, allegedly incurred in the defense against Developer, Costa Dorada Associates, Ltd., of approximately $632,018.92, which Plaintiff seeks to recover in this Action.  (*See* Complaint at ¶18.)

24.    Based upon the Plaintiff's Complaint, Plaintiff is seeking damages in excess of the jurisdictional minimum.

### V. NOTICE OF REMOVAL IS SUFFICIENT AND TIMELY

25.    Pursuant to 28 U.S.C. ¶ 1446(a), a notice of removal shall contain a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon the removing party in the State court action.

26.    As detailed herein, this Notice of Removal clearly and plainly sets forth the legal basis for removal and the underlying facts in support.  This removal is based on diversity jurisdiction, and the facts clearly set forth that the requirements of complete diversity and amount in controversy threshold have been satisfied.

27.    In compliance with the procedures for removal, a copy of all process, pleadings, and orders served upon Crum & Forster Specialty and U.S. Fire are provided and attached hereto within composite Exhibit "D".

28.    Additionally, 28 U.S.C. § 1446(b) and case law following same requires that a notice of removal must be filed within thirty (30) days after formal receipt by the Defendant of a

6

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAYVIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130  •  TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\100126_0001\C53.E070

copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.

29. On January 22, 2010, the Plaintiff filed its Complaint in the Seventeenth Judicial Circuit in and for Broward County, Florida (See Exhibit "B"). On January 26, 2010, Crum & Forster Specialty and U.S. Fire were served with the Complaint by Electronic Delivery as forwarded by the Chief Financial Officer of the State of Florida. (*See* Returns of Service attached hereto as composite Exhibit "A".) As such, this Notice of Removal must be filed on or before February 25, 2010.

30. As this Notice of Removal is filed on or before February 25, 2010, removal is timely.

31. Additionally, 28 U.S.C. § 1446(b) requires that a case may not be removed on the basis of jurisdiction conferred by 28 U.S.C. § 1332 more than one (1) year after commencement of the action.

32. As this action was commenced on January 22, 2010, this Notice of Removal is timely because it is filed before January 22, 2011.

33. This Notice of Removal complies with the requirements and procedures outlined in 28 U.S.C. § 1446 – Procedure for Removal.

## VI. CONCLUSION

As the amount in controversy exceeds the sum of $75,000.00 and the action is between citizens of different states, with no Defendants being residents of the State of Florida, this action may be removed pursuant to 28 U.S.C. §§ 1441, 1332(a)(1) and 1446(b). Crum & Forster Specialty and U.S. Fire have complied with all the removal procedures outlined in 28 U.S.C. § 1446. Accordingly, there is original jurisdiction in this Court and Defendants respectfully

7

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAYVIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\100126_0001\C53.E070

request that this action proceed in this Court as an action properly removed pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## VII. **VERIFICATION**

STATE OF FLORIDA                    )

COUNTY OF MIAMI-DADE        )

Patricia A. Leid, being duly sworn, deposes and says that she is an attorney at Thornton, Davis & Fein, P.A., attorneys for Defendants, Crum & Forster Specialty Insurance Company and United States Fire Insurance Company, in this case, and that she has read the foregoing Notice of Removal and knows the contents thereof and the facts related therein are true and correct to the best of his knowledge and belief, and that he executed the same for the uses and purposes therein expressed.

_____
PATRICIA A. LEID, ESQ.

Sworn to and Subscribed to before me this
_11th_ day of February, 2010.

_____
Notary Public

My Commission Expires: 

> **ASTRID BENNETT**
> MY COMMISSION # DD 943614
> EXPIRES: January 28, 2014
> Bonded Thru Notary Public Underwriters

## **CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished on February 11, 2010 by U.S. Mail to: ADAM P. HANDFINGER, ESQUIRE of PECKAR & ABRAHAM, 1 S.E. Third Avenue, Suite 3100, Miami, Florida 33131; Telephone (305) 358-

8

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAYVIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\100126_0001\C53.E070

2600; Facsimile (305) 375-0328, Counsel for Plaintiff STILES CORPORATION, d/b/a STILES CONSTRUCTION COMPANY.

*Patricia A. Leid*

**HOLLY S. HARVEY, ESQ.**
Fla. Bar No. 600430
harvey@tdflaw.com
**PATRICIA A. LEID, ESQ.**
Fla. Bar No. 027006
leid@tdflaw.com
**THORNTON, DAVIS & FEIN, P.A.**
Attorneys for Defendants, Crum & Forster Specialty Insurance Company and United States Fire Insurance Company
Brickell BayView Centre
80 SW 8th St., Suite 2900
Miami, FL 33130
Telephone: (305) 446-2646
Fax: (305) 441-2374

9

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAYVIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130  •  TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\100126_0001\C53.E070

EXHIBIT A

**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services



10-03540

---

STILES CONSTRUCTION, DBA STILES
CONSTRUCTION COMPANY

PLAINTIFF(S),

VS.

CRUM & FORSTER SPECIALTY INSURANCE COMPANY
AND UNITED STATES FIRE INSURANCE COMPANY

DEFENDANT(S).
_____/
SUMMONS, IMPORTANTE, COMPLAINT, EXHIBITS, DISCOVERY

CASE #:      1002468-25
COURT:       CIRCUIT COURT
COUNTY:      BROWARD
DFS-SOP#:  10-03540

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer
of the State of Florida. Said process was received in my office by PROCESS SERVER on the
22nd day of January, 2010 and a copy was forwarded by Electronic Delivery on the 26th day of
January, 2010 to the designated agent for the named entity as shown below.

CRUM & FORSTER SPECIALTY INSURANCE COMPANY
SONIA KONOPI  (legalsopteam@cfins.com)
LEGAL ASSISTANT
PO BOX 1973
MORRISTOWN NJ 07962

\* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any
subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Alex Sink*

Alex Sink
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

ADAM P. HANDFINGER
PECKAR & ABRAMSON
SUITE 3100
ONE SOUTHEAST THIRD AVENUE
MIAMI FL 33131

CYA



# ⅀ *RUSH*

| __X__ IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA |  |  |
|---|---|---|
| ____ IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA |  |  |

| DIVISION<br>√ CIVIL<br>__ OTHER | **SUMMONS** 10 | CASE NUMBER<br>0 2 4 6 8 |
|---|---|---|

| PLAINTIFF(S)<br><br>STILES CONSTRUCTION, d/b/a<br>STILES CONSTRUCTION<br>COMPANY | VS. DEFENDANT(S)<br><br>CRUM & FORSTER SPECIALTY<br>INSURANCE COMPANY AND UNITED<br>STATES FIRE INSURANCE COMPANY | **25** |
|---|---|---|

THE STATE OF FLORIDA:

To Each Sheriff of the State:

       YOU ARE COMMANDED to serve copies of the following: **the Summons and Request for Production of Documents** in this action on the Defendant:

              **Crum & Forster Specialty Insurance Company**
              **c/o Insurance Commissioner**
              **200 East Gaines Street**
              **Tallahassee, FL 32399**

Each Defendant is required to serve written defenses to the Complaint on Plaintiff's Attorney

              **Adam P. Handfinger**
whose address is:       **PECKAR & ABRAMSON**
          **One Southeast Third Avenue, Suite 3100**
            **Miami, Florida 33131**
            **Tel:  (305) 358 - 2600**

within __20__ days after service of this summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or petition

| HOWARD FORMAN<br>CLERK OF COURTS | BY:_____ | DATE<br><br>JAN 20 2010 |
|---|---|---|

Serveo
Date _1-22-10_   Time _150 PM_
MCN. No. 111
is a certified process server in the
Circuit and County Courts
in and for the Second Judicial Circuit

RECEIVED IN SERVICE OF PROCESS SECTION
2010 JAN 22  PM 12: 52
BY FLORIDA DEPARTMENT OF FINANCIAL SERVICES

2010 JAN 26  AM 10: 35
OF FINANCIAL SERVICES

## IMPORTANTE

Usted ha sido demandado legalmente.   Tiene **20 dias**, contados a partir del recibo de esta nificación, para contestar la demandá adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberá usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney".  (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciaries ont été entreprises contre vous.  Vous avez **20 jours** consecutifs à partir de la date de l'assignation de cet citation pour deposer une response écrite à la plainte ci-jointe auprès de ce Tribunal.  Un simple coup de téléphone est insuffisant pour vous protegér;  vous êtes obligé de déposer votre réponse écrite, avec mention du numéro de dossier ci-dessus et do nom des parties nommées ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne déposez pas votre reponse écrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent être saisis par la suite, sans aucun préavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez réquerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez téléphoner a un service de référence d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de téléphones).

Si vous choisissez de déposer vous-même une réponse écrite, il vous faudra également, en même temps que cette formalité, faire parvenir ou expédier une copie au carbone ou une photocopie de votre réponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nommé ci-dessous.

**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**

Florida Department of Financial Services


10-03515

STILES CONSTRUCTION, DBA STILES
CONSTRUCTION COMPANY

PLAINTIFF(S),

VS.

CRUM & FOSTER SPECIALTY INSURANCE
COMPANY AND UNITED STATES FIRE
INSURANCE COMPANY

DEFENDANT(S).
_____/

SUMMONS, IMPORTANT, COMPLAINT, EXHIBITS, DISCOVERY

**CASE #:** 10-02468-25
**COURT:** CIRCUIT COURT
**COUNTY:** BROWARD
**DFS-SOP#:** 10-03515

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer
of the State of Florida.  Said process was received in my office by PROCESS SERVER on the
22nd day of January, 2010 and a copy was forwarded by Electronic Delivery on the 26th day of
January, 2010 to the designated agent for the named entity as shown below.

   UNITED STATES FIRE INSURANCE COMPANY
   SONIA KONOPI  (legalsopteam@cfins.com)
   LEGAL ASSISTANT
   PO BOX 1973
   MORRISTOWN NJ 07962

   \* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any
subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Alex Sink*

Alex Sink
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

ADAM P. HANDFINGER
PECKAR & ABRAMSON
SUITE 3100
ONE SOUTHEAST THIRD AVENUE
MIAMI FL 33131

CYA

**⚡ RUSH**

| _X_ IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA |
|---|
| ____ IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA |

| DIVISION<br>√ CIVIL<br>_ OTHER | SUMMONS | CASE NUMBER<br>1 0   0 2 4 6 8 |
|---|---|---|
| **PLAINTIFF(S)**<br><br>STILES CONSTRUCTION, d/b/a STILES CONSTRUCTION COMPANY | **VS. DEFENDANT(S)**<br><br>CRUM & FORSTER SPECIALTY INSURANCE COMPANY AND UNITED STATES FIRE INSURANCE COMPANY | **25** |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

    YOU ARE COMMANDED to serve copies of the following: the **Summons and Request for Production of Documents** in this action on the Defendant:

> **United States Fire Insurance Company**
> **c/o Insurance Commissioner**
> **200 East Gaines Street**
> **Tallahassee, FL 32399**

Each Defendant is required to serve written defenses to the Complaint on Plaintiff's Attorney

whose address is:

> **Adam P. Handfinger**
> **PECKAR & ABRAMSON**
> **One Southeast Third Avenue, Suite 3100**
> **Miami, Florida 33131**
> **Tel: (305) 358 - 2600**

within _20_ days after service of this summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or petition

| HOWARD FORMAN<br>CLERK OF COURTS | BY: | | DATE<br><br>JAN 20 2010 |
|---|---|---|---|

Served

Date _1-22-10_   Time _1:50 AM_

MCN, No. 111

is a certified process server in the
Circuit and County Courts

in and for the Second Judicial Circuit

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene **20 días**, contados a partir del recibo de esta nificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefónica no lo protegerá; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberá usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney".  (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciaries ont été entreprises contre vous.  Vous avez **20 jours** consecutifs à partir de la date de l'assignation de cet citation pour deposer une response écrite à la plainte ci-jointe auprès de ce Tribunal.  Un simple coup de téléphone est insuffisant pour vous proteger; vous êtes obligé de déposer votre réponse écrite, avec mention du numéro de dossier ci-dessus et do nom des parties nommées ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne déposez pas votre reponse écrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent être saisis par la suite, sans aucun préavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez réquerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez téléphoner a un service de référence d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de téléphones).

Si vous choisissez de déposer vous-même une réponse écrite, il vous faudra également, en même temps que cette formalité, faire parvenir ou expédier une copie au carbone ou une photocopie de votre réponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nommé ci-dessous.

EXHIBIT B



STILES CORPORATION, d/b/a STILES
CONSTRUCTION COMPANY,

        Plaintiff,

vs.

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY, a foreign
corporation, UNITED STATES FIRE
INSURANCE COMPANY, a foreign
corporation.

        Defendants.

_____/

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL   CIRCUIT   IN   AND   FOR
BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:    10   02468



## COMPLAINT

    Plaintiff, Stiles Corporation d/b/a Stiles Construction Company ("Stiles") hereby sues

Defendants, Crum & Forster Specialty Insurance Company ("Crum & Forster") and United

States Fire Insurance Company ("U.S. Fire") (Crum & Forster and U.S. Fire shall be collectively

referred to as "Defendants") and alleges as follows:

    1.     This is an action for damages in excess of $15,000.00, exclusive of interest,

attorneys' fees and costs.

    2.     Plaintiff, Stiles, is a corporation organized and existing under the laws of the State

of Florida and is authorized to do business in the State of Florida.

    3.     Upon information and belief, Defendant, Crum & Forster is a foreign corporation

authorized to do business in the State of Florida.

    4.     Upon information and belief, Defendant, U.S. Fire is a foreign corporation

authorized to do business in the State of Florida.

    5.     Venue is proper in this Court as the events that gave rise to these claims arose in

Broward County, Florida.

PECKAR & ABRAMSON

### FACTUAL BACKGROUND

6.     Stiles, as General Contractor, was hired by Costa Dorada Associates, Ltd. (the "Developer" or "Costa Dorada") to construct the building and improvements for the condominium known as the Q-Club Resort and Residences, in Fort Lauderdale, Florida (the "Project").

7.     As general contractor, Stiles furnished labor, services and materials, by and through its subcontractors, for the construction of the Project.

8.     Costa Dorada failed to make full payment to Stiles. As a result, Stiles recorded a claim of lien on the Project and demanded arbitration with the American Arbitration Association. A copy of Stiles' Arbitration Demand is attached hereto as **Exhibit "A"**.

9.     In turn, Costa Dorada served a counterclaim against Stiles in the amount of approximately $20,000,000.00. A copy of Costa Dorada's Answering Statement filed with the American Arbitration Association indicating the existence of a counterclaim is attached hereto as **Exhibit "B"**.

10.     Costa Dorada's claims against Stiles alleged defects and deficiencies in the performance of work by Stiles' subcontractors, including the alleged failure to properly seal pipe penetrations and the failure to properly install windows and doors at the Project.

11.     Costa Dorada alleged that these defects resulted in water penetration/intrusion causing physical injury to other tangible property, including but not limited to the following: stucco, concrete slab, drywall, electrical system, carpet and other components of the Project. Costa Dorada also claimed damages for its alleged loss of use of the Project resulting from the property damage.

12.   Crum & Forster issued the following commercial general liability insurance policies naming Stiles as its primary insured (the "Crum & Forster Policies"):

| Policy Number | Policy Period |
|---|---|
| GLO131152 | 6/30/2008-6/30/2009 |
| GLO101377 | 6/30/2007-6/30/2008 |
| GLO091221 | 6/30/2006-6/30/2007 |
| GLO081008 | 6/30/2005-6/30/2006 |

A copy of the Crum & Forster Policies are attached hereto as **Composite Exhibit "C"**[1].

13.   U.S. Fire issued the following commercial general liability insurance policies naming Stiles as its primary insured (the "U.S. Fire Policies"):

| Policy Number | Policy Period |
|---|---|
| 5410301013 | 6/30/2003-6/30/2004 |
| 5410301031 | 6/30/2004-6/30/2005 |

Due to the voluminous nature of the U.S. Fire Policies we have attached a copy of the declaration pages of the U.S. Fire Policies hereto as **Exhibit "D"**.

14.   The damages alleged by Costa Dorada (which Stiles adamantly and expressly denied), if true, occurred in whole or in part during the periods of the Policies, resulted from defective labor, services and materials furnished by Stiles' subcontractors, and resulted in property damage covered by the Policies.

---

[1] We have attached a complete Policy # GLO131152, which is substantially similar to the other Crum & Forster policies and have only attached the declaration pages for the other Crum & Forster Policies due to the voluminous nature of the Policies. Crum & Forster have a complete copy of the Crum & Forster Policies.

15.     Accordingly, and in accordance with the terms of the Policies and Florida law, Defendants owed Stiles a duty of defense and should have undertaken to defend Stiles from Costa Dorada's allegations.

16.     Despite Stiles' timely demand for Defendants to defend it against these claims, it failed to do so.

17.     Stiles retained the law firm of Peckar & Abramson, P.C. to defend against Costa Dorada's claims.  Stiles successfully defended against Costa Dorada's claims resulting in the settlement of same.

18.     Stiles incurred approximately $632,018.92 in the defense of Costa Dorada's claims for which it seeks to recover in this Action.

19.     Stiles has retained the undersigned law firm to prosecute this Action and is obligated to pay a reasonable fee for their services. Stiles is entitled to recover its attorney's fees in bringing this Action from Defendants pursuant to §627.428 of the Florida Statutes.

20.     Stiles has complied with all conditions precedent to the maintenance of this action and/or said conditions have been waived.

**COUNT I**
**ACTION FOR DECLARATORY RELIEF AGAINST CRUM & FORSTER**

21.     Stiles re-alleges and reaffirms the allegations contained in paragraphs 1 through 17, above, as if fully set forth herein.

22.     This is an action for Declaratory Judgment under Chapter 86 of the Florida Statutes.

23.     Stiles demanded that Crum & Forster, pursuant to the Crum & Forster Policies, provide it a defense, coverage and indemnification with respect to the claims asserted by Costa Dorada.

PECKAR & ABRAMSON
4

24.     The controversy between Stiles and Crum & Forster rests on the present ascertainable set of facts as stated herein.

25.     Crum & Forster failed and/or refused to indemnify, cover and/or provide Stiles with a defense against the claims of Costa Dorada. As a result of Crum & Forster's failure to cover, defend and/or indemnify Stiles, and because of the nature of Costa Dorada's claims, Stiles is in doubt as to its rights as an insured under the Policy.

26.     Stiles is suffering and continues to suffer damages in excess of $15,000.00 as a result of Crum & Forster's failure to cover, defend and indemnify Stiles as required by the Crum & Forster Policies and applicable law.

27.     Pursuant to §86.021 of the Florida Statutes, Stiles has the right to seek judicial construction of the Crum & Forster Policies, as well as a determination that Crum & Forster owed Stiles a defense and coverage for the claims asserted by Costa Dorada and a declaration of Stiles' rights under the Crum & Forster Policies.

28.     Stiles reserves the right to seek supplemental monetary relief in addition to this Court's Declaratory Judgment, in accordance of with §86.061 of the Florida Statutes.

WHEREFORE, Plaintiff, Stiles Corporation d/b/a Stiles Construction Company requests that this Court enter a Declaratory Judgment against Defendant, Crum & Forster construing the Crum & Forster Policies and determining that Crum & Forster owed Stiles a defense and coverage for the claims asserted by Costa Dorada, declaring Stiles' rights under the Crum & Forster Policies, awarding Stiles its attorney's fees and costs, and for such other and further relief as this Court may deem just and proper.

## COUNT II
## BREACH OF CONTRACT AGAINST CRUM AND FORSTER

29.     Stiles re-alleges and reaffirms paragraphs 1 through 17, above, as if fully set forth herein.

30.     Pursuant to the terms of the Crum & Forster Policies, Crum & Forster owed Stiles a defense against the claims of Costa Dorada.

31.     Crum & Forster breached its duties to Stiles under the Crum & Forster Policies without any legal justification.

32.     Stiles suffered and continues to suffer damages in excess of $15,000.00 as a result of Crum & Forster's breaches of the Crum & Forster Policies, including but not limited to, Crum & Forster's failure to defend and/or cover Stiles as required by the Crum & Forster Policies and applicable law.

WHEREFORE, Plaintiff, Stiles Corporation d/b/a Stiles Construction Company demands judgment for damages against Defendant, Crum & Forster, including interest, costs and reasonable attorney's fees, and for such other and further relief as this Court may deem just and proper.

## COUNT III
## ACTION FOR DECLARATORY RELIEF AGAINST U.S. FIRE

33.     Stiles re-alleges and reaffirms the allegations contained in paragraphs 1 through 17, above, as if fully set forth herein.

34.     This is an action for Declaratory Judgment under Chapter 86 of the Florida Statutes.

35.     Stiles demanded that U.S. Fire, pursuant to the U.S. Fire Policies, provide it a defense, coverage and indemnification with respect to the claims asserted by Costa Dorada.

36.     The controversy between Stiles and U.S. Fire rests on the present ascertainable set of facts as stated herein.

37.     U.S. Fire failed and/or refused to indemnify, cover and/or provide Stiles with a defense against the claims of Costa Dorada.  As a result of U.S. Fire's failure to cover, defend and/or indemnify Stiles, and because of the nature of Costa Dorada's claims, Stiles is in doubt as to its rights as an insured under the U.S. Fire Policies.

38.     Stiles is suffering and continues to suffer damages in excess of $15,000.00 as a result of U.S. Fire's failure to cover, defend and indemnify Stiles as required by the U.S. Fire Policies and applicable law.

39.     Pursuant to §86.021 of the Florida Statutes, Stiles has the right to seek judicial construction of the U.S. Fire Policies, as well as a determination that U.S. Fire owed Stiles a defense and coverage for the claims asserted by Costa Dorada and a declaration of Stiles' rights under the U.S. Fire Policies.

40.     Stiles reserves the right to seek supplemental monetary relief in addition to this Court's Declaratory Judgment, in accordance of with §86.061 of the Florida Statutes.

WHEREFORE, Plaintiff, Stiles Corporation d/b/a Stiles Construction Company requests that this Court enter a Declaratory Judgment against Defendant, U.S. Fire construing the U.S. Fire Policies and determining that U.S. Fire owed Stiles a defense and coverage for the claims asserted by Costa Dorada, declaring Stiles' rights under the U.S. Fire Policies, awarding Stiles its attorney's fees and costs, and for such other and further relief as this Court may deem just and proper.

## COUNT IV
## BREACH OF CONTRACT AGAINST U.S. FIRE

41.     Stiles re-alleges and reaffirms paragraphs 1 through 17, above, as if fully set forth herein.

42.     Pursuant to the terms of the U.S. Fire Policies, U.S. Fire owed Stiles a defense against the claims of Costa Dorada.

43.     U.S. Fire breached its duties to Stiles under the U.S. Fire Policies without any legal justification.

44.     Stiles suffered and continues to suffer damages in excess of $15,000.00 as a result of U.S. Fire's breaches of the U.S. Fire Policies, including but not limited to, U.S. Fire's failure to defend and/or cover Stiles as required by the U.S. Fire Policies and applicable law.

WHEREFORE, Plaintiff, Stiles Corporation d/b/a Stiles Construction Company demands judgment for damages against Defendant, U.S. Fire, including interest, costs and reasonable attorney's fees, and for such other and further relief as this Court may deem just and proper.

PECKAR & ABRAMSON
*Attorneys for Plaintiff*
*STILES CORPORATION, d/b/a STILES*
*CONSTRUCTION COMPANY*
1 S.E. 3rd Avenue, Suite 3100
Miami, Florida  33131
Telephone: 305-358-2600
Fax:  305-375-0328

Adam P. Handfinger
FBN: 636142
Sahr O. Dumbar
FBN: 0014272

Dated the 20th day of January, 2010.

PECKAR & ABRAMSON
8



American Arbitration Association
*Dispute Resolution Services Worldwide*

### CONSTRUCTION INDUSTRY ARBITRATION RULES
#### Demand for Arbitration

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☒
*There is no additional administrative fee for this service.*

| Name of Respondent | Name of Representative (if known) |
|---|---|
| Costa Dorada Associates, Ltd. | Ronald Pena, Esq. |
| **Address:** | **Name of Firm (if applicable)** |
| 10520 NW 26th Street | Hinshaw & Culbertson |
| Suite C-201 | **Representative's Address:**<br>9155 S. Dadeland Blvd., Suite 1600 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Doral | FL | 33172 | Ft. Lauderdale | FL | 33156 |

| Phone No. | Fax No. | Phone No.<br>305-358-7747 | Fax No.<br>305-577-1063 |
|---|---|---|---|
| **Email Address:** | | **Email Address:**<br>RPena@hinshawlaw.com | |

The named claimant, a party to an arbitration agreement dated July 28, 2004 _____, which provides for arbitration under the Construction Industry Rules of the American Arbitration Association, hereby demands arbitration.

**ARBITRATION CLAUSE CONTAINED IN THE FOLLOWING CONTRACT DOCUMENT: (Please check one)**
☒ AIA–American Institute of Architects  ☐ AGC–Associated General Contractors of America  ☐ DBIA–Design Build Institute of America
☐ EJCDC–Engineers Joint Contract Documents Committee  ☐ ASA–American Subcontractors Association ☐ CMAA–Construction Management
Association of America  ☐ Other (specify)_____

**THE NATURE OF THE DISPUTE**

Contract Dispute/Recovery of unpaid funds

| Dollar Amount of Claim  $ 4,282,029.74 | Other Relief Sought:  ☒ Attorneys Fees   ☒ Interest |
|---|---|
| | ☒ Arbitration Costs  ☐ Punitive/ Exemplary  ☐ Other |

**AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND** (please refer to the fee schedule in the rules for the appropriate fee) $ 8,000.00

**PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:**

Construction Law/Dispute Experience

Hearing locale Broward County _____  (check one) ☒ Requested by Claimant  ☐ Locale provision included in the contract

| Estimated time needed for hearings overall: | Specify type of business: Claimant General Contractor |
|---|---|
| _____ hours or    3 wks | Respondent Owner/Developer |

**You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one)  ☒ Atlanta, GA  ☐ Dallas, TX  ☐ East Providence, RI  ☐ Fresno, CA  ☐ International Centre, NY, with a request that it commence administration of the arbitration.  Under the rules, you may file an answering statement within fifteen days after notice from the AAA.**

| Signature (may be signed by a representative)   Date: 38076   10/15/07 | Name of Representative<br>Adam P. Handfinger, Esq. |
|---|---|
| **Name of Claimant**<br>Stiles Corporation d/b/a Stiles Construction Company | **Name of Firm (if applicable)**<br>Peckar & Abramson |
| **Address** (to be used in connection with this case)<br>300 S.E. 2nd Street | **Representative's Address**<br>401 East Las Olas Blvd. - Ste. 1600 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Ft. Lauderdale | FL | 33301 | Ft. Lauderdale | FL | 33301 |

| Phone No.<br>954-627-9300 | Fax No.<br>954-627-9386 | Phone No.<br>954-764-5222 | Fax No.<br>954-764-5228 |
|---|---|---|---|
| **Email Address:** | | **Email Address:**<br>AHandfinger@pecklaw.com | |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA.  Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online.  AAA Customer Service can be reached at 800-778-7879

**EXHIBIT**

A



American Arbitration Association
*Dispute Resolution Services Worldwide*

## ARBITRATION
### Answering Statement and Counterclaim Request

| | |
|---|---|
| *MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* **There is no additional administrative fee for this service.** | ☐ |

| | |
|---|---|
| Name of Claimant<br>Stiles Corporation d/b/a Stiles Construction Company | Name of Representative (if known)<br>Adam P. Handfinger, Esquire |
| Address:<br>300 S.E. 2nd Street | Name of Firm (if applicable)<br>Peckar & Abramson |
| | Representative's Address:<br>401 East Las Olas Boulevard, Suite 1600 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Fort Lauderdale | FL | 33301 | Fort Lauderdale | FL | 33301 |

| Phone No.<br>954-627-9300 | Fax No.<br>954-627-9386 | Phone No.<br>954-764-5222 | Fax No.<br>954-764-5228 |
|---|---|---|---|

| Email Address: | Email Address:<br>AHandfinger@pecklaw.com |
|---|---|

| AAA CASE # (if known)  32 110 Y 00821 07 | Filing a Counterclaim:   Yes ☑      No ☐<br>*If yes, please describe nature of counterclaim in space below.* |
|---|---|

PLEASE ANSWER CLAIMANT DEMAND FOR ARBITRATION (AND DESCRIBE COUNTERCLAIM, IF APPLICABLE):
*Attach additional pages as necessary.*
Respondent denies Claimant's claim in its entirety. Respondent is entitled to an award of damages against Claimant for breach of contract, construction defects, construction deficiencies, delay damages, consequential damages, interest, arbitration costs and attorney's fees.

| Dollar Amount of Claim or Counterclaim $ 20,000,000.00 | Other Relief Sought:  ☑Attorneys Fees   ☑Interest<br>☑Arbitration Costs ☐Punitive/ Exemplary  ☐Other |
|---|---|

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $ 12,500.00

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:

| Hearing locale  Broward | (check one)☑Requested by Respondent | ☐Locale provision included in the contract |
|---|---|---|

| Estimated time needed for hearings overall: | hours or | 21 | days |
|---|---|---|---|

| Signature (may be signed by a representative)   Date:<br>11/22/07 | Name of Representative<br>Laurence S. Litow, Esquire |
|---|---|
| Name of Respondent<br>Costa Dorada Associates, Ltd. | Name of Firm (if applicable)<br>Hinshaw & Culbertson LLP |
| Address (to be used in connection with this case)<br>10520 NW 26th Street | Representative's Address:<br>One East Broward Blvd, Suite 1010 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Doral | FL | 33172 | Fort Lauderdale | FL | 33301 |

| Phone No. | Fax No. | Phone No.<br>954-467-7900 | Fax No.<br>954-467-1024 |
|---|---|---|---|

| Email Address: | Email Address:<br>lslitow@hinshawlaw.com |
|---|---|

PLEASE SEND TWO COPIES OF THIS ANSWERING STATEMENT, WITH THE FILING FEE FOR ANY COUNTERCLAIM, AS
PROVIDED FOR IN THE RULES, TO THE AAA. SEND THE ORIGINAL ANSWERING STATEMENT TO THE CLAIMANT.

Please visit our website at www.adr.org if you would like to file this counterclaim online.   AAA Customer Service can be reached at 800-778-7879



EXHIBIT
B



Crum & Forster
Specialty Insurance Co.
CLAIM REPORTING

---

DEAR POLICYHOLDER:

Please Report claims to:

Therese M. Bissonnette
Claim Supervisor
Crum & Forster Specialty Insurance Company
305 Madison Avenue
Morristown, NJ 07962

Phone: 973-490-6599
Fax: 1-877-622-6230
Email: Therese_Bissonnette@cfins.com

All Claims Handling is centralized at this location for Crum & Forster Specialty Insurance
Company.

Thank You.

**EXHIBIT**

C



Crum & Forster

**COMMERCIAL GENERAL LIABILITY POLICY**

## DECLARATIONS

POLICY NUMBER: GLO 131152

| | |
|---|---|
| DATE ISSUED: July 7, 2008 | REPLACEMENT OF: GLO 101379   Agent: *Kevin McGrath* <br> Address: *1400 Centrepark Blvd* <br> *West Palm Beach FL* |

Premium: *$24,152*   TRIA:

NAMED INSURED & ADDRESS: Stiles Corporation
300 SE 2nd Street
Ft. Lauderdale, FL 33301

Policy Fee: *55*   Insp. Fee: ___   EMPA: ___
Tax: *$12,09*   Service Fee: *$24.10*   ICF *$241.8?*

Named Insured's Business:  General Contractor          Form of Business:  Corporation

POLICY PERIOD:  POLICY COVERS FROM:  06/30/08     TO:  06/30/09

12:01 a.m. Standard Time at the Named Insured's address stated above

| COVERAGE IS PROVIDED BY: | REPRESENTATIVE: <br> Number: 81256 |
|---|---|
| Crum & Forster Specialty Insurance Company <br> ( A Stock Company) <br> 305 Madison Avenue <br> Morristown, NJ 07962 | Broker:          Westrope Associates <br> Telephone Number: (816) 842-8222 <br> Office Address:     801 W. 47th Street, Ste. 500 <br> Town, State & Zip:  Kansas City, MO 64112 |

LIMITS OF INSURANCE:    (The Limits of Insurance are the amounts shown below.)

(a)  GENERAL AGGREGATE LIMIT (Other Than Products/Completed Operations)  $2,000,000
(b)  PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT          $2,000,000
(c)  PERSONAL & ADVERTISING INJURY LIMIT              $1,000,000
(d)  EACH OCCURRENCE LIMIT                    $1,000,000
(e)  DAMAGE TO PREMISES RENTED TO YOU LIMIT          $50,000
(f)  MEDICAL EXPENSE LIMIT                    $ Excluded

Surplus Lines Agent:  James S. Gann
SELF INSURED Business Address: 801 International Pkwy, 5th Floor
Lake Mary, FL 32746

Licensee#  A092830

Countersignature: ___

Applies ☐  Per Claim
Applies ☒  Per Occurrence

POLICY JACKET, SCHEDULES, FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT
INCEPTION (Number and Edition Date) AS PER MASTER FORMS LIST ATTACHED.

Location of All Premises You Own, Rent or Occupy: See Schedule of Locations on file with Company.

DEPOSIT PREMIUM: $424,152              MINIMUM ANNUAL PREMIUM: $424,152

PREMIUM SUBJECT TO ADJUSTMENT: Yes ☒  No ☐

Authorized Representative

THESE DECLARATIONS, TOGETHER WITH POLICY JACKET, MASTER FORMS LIST, SCHEDULES AND
ENDORSEMENTS, IF ANY, ARE ISSUED AS PART OF AND IN THE COMPLETION OF THE ABOVE NUMBER POLICY.

This insurance is issued pursuant to the Florida Surplus Lines law. Persons insured by surplus lines
carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery
for the obligation of an insolvent unlicensed insurer.

DecDedOcc 09 13 05

**Crum & Forster Specialty Insurance Company**
**An Arizona Corporation**
**Home Office: Phoenix, AZ**

(A Capital Stock Company)

SIGNATURE

Mary Jane Robertson
President

SIGNATURE

Felicia Garland
Secretary

GEN 007 09 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MASTER FORMS LIST

The following forms and endorsements are attached to this policy effective at inception:

| FORM TITLE | FORM NUMBER |
|---|---|
| Declarations Page | CGLDecDedOcc 09 13 05 |
| Signature Page – Crum & Forster Specialty | GEN 007 (0907) |
| Master Forms List | GEN 0001 |
| Absolute Asbestos Exclusion | CFSGL 202 (0500) |
| Absolute Silica/Silicosis | CFSGL 189 (0106) |
| Additional Insured – Mortgagee, Assignee or Receiver | CG 2018 (1185) |
| Additional Insured – Owners, Lessees or Contractors | CG 2037 (0704) |
| Additional Insured – Owners, Lessees or Contractors | CG 2010 (0704) |
| Additional Insured – State or Political Subdivisions – Permits | CG 2012 (0798) |
| Commercial General Liability Coverage Form | CG 0001 1204 |
| Common Policy Conditions | IL 0017 1198 |
| Computer Related and Other Electronic Problems Exclusion | CFSGL 211 (0503) |
| Continuous or Progressive Injury and Damage Exclusion | CFSGL163 (0405) |
| Cross Liability Exclusion | CFSGL212 (0902) |
| Definition of Gross Sales | CFSGL 186 (0106) |
| Designated Construction Project(s) General Aggregate Limit with Cap | CFSGL 118 |
| Disclosure Pursuant to Terrorism Insurance Act | IL 0985 (0108) |
| Earned Premium & Composite Rate Endorsement | CFSGL 185 (0608) |
| EIFS Amendatory Endorsement | CFSGL273 (0107) |
| EIFS/DEFS Exclusion | CFSGL 216 |
| Employee Benefits Liability Coverage | CG 0435 (0202) |
| Employment Related Practices Exclusion | CG 2147 (0798) |
| Exclusion of Certified Acts of Terrorism | CG 2173 (0108) |
| Exclusion – Contractors Professional Liability | CG 2279 (0798) |
| Exclusion – Coverage C Medical Payments | CG 2135 (1001) |
| Exclusion – Designated Operations Covered by a Consolidated (Wrap Up) | CG 2154 (0196) |
| Exclusion – Engineers, Architects or Surveyors Professional Liability | CG 2243 (0798) |
| Exclusion – Violation of Statutes that Govern Emails, Fax Phone Calls or other Methods of Sending Material | CG 0067 (0305) |
| Fungi or Bacteria Exclusion | CG 2167 (0402) |
| Independent Contractor(s) Insurance Agreement | CFSGL114 (0505) |
| Lead Exclusion | CFSGL 223 (0999) |
| Notice/Knowledge/Unintentional Errors & Omissions | CFSGL 124 |
| Nuclear Energy Liability Exclusion Endorsement | IL 0021 0498 |
| Occupational Disease Exclusion | CFSGL 226 (0999) |
| Primary/Non-Contributory Endorsement | CFSGL120 (0106) |
| Real Estate Property Management Operations Exclusion | CFSGL171 (0605) |
| Self-Insured Retention Endorsement | CFSGL164a (0505) |
| Service of Process Clause | CFSGL 254 |
| State Operations Exclusion | CFSGL158 (1204) |
| Subsidence and Earth Movement Endorsement | CFSGL 235 (0308) |
| Total Pollution Exclusion with a Hostile Fire Exception | CG 2155 (0999) |
| Waiver of Transfer of Rights of Recovery | CG 2404 (1093) |



## NAMED INSURED LISTING ENDORSEMENT

This endorsement forms a part of policy No.  GLO-131152

Issued by Crum & Forster Specialty Insurance Company

It is agreed that item 1 (Name of Insured) of the declarations is as follows:

Stiles Corporation

Architecture 6400, Inc.

Atlantic Mulch

Enviro Plus d/b/a Stiles Landscape

Stiles Financial Services fka Stiles Capital Group

Stiles Construction Co.

Stiles Development co.

Stiles Landscape Co.

Stiles realty Co.

Stiles Retail Co.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

CFSGL 225

# ABSOLUTE ASBESTOS EXCLUSION

It is agreed that:

1. This policy does not apply to "bodily injury", "property damage", or "personal or advertising injury" in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

2. This policy does not apply to "economic loss", "diminution of property", "abatement costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

3. This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or "suit" arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

For the purpose of this exclusion only, the following additional terms are defined:

"Abatement costs" means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal or replacement.

"Diminution of property" means the diminishing or lessening in value of property.

"Economic loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

"Equitable relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.

CFSGL202  05 00



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# ABSOLUTE SILICA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART:

It is agreed that:

1. This policy does not apply to "bodily injury", "property damage", or "personal and advertising injury" in any way or to any extent arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica, or any product or action used or taken to protect any person from exposure to silica in any form.

2. This policy does not apply to "economic loss", "diminution of property", "abatement costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica or any product or action used or taken to protect any person from exposure to silica in any form.

3. This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or "suit" arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica or any product or action used or taken to protect any person from exposure to silica in any form.
For the purpose of this exclusion only, the following additional terms are defined:

"Abatement costs" means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal or replacement.

"Diminution of property" means the diminishing or lessening in value of property.

"Economic loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

"Equitable relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.

CFSGL 189 01 06



POLICY NUMBER: GLO 131152                              COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE, OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**  As required by written contract.


**Designation of Premises:**  As required by written contract.




(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1.  WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

2.  This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.



POLICY NUMBER: GLO 131152

COMMERCIAL GENERAL LIABILITY
CG 20 37 07 04

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| As required by written contract. | As required by written contract. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

CG 20 37 07 04

© ISO Properties, Inc., 2004

Page 1 of 1   □

POLICY NUMBER:  GLO 131152

COMMERCIAL GENERAL LIABILITY
CG 20 10 07 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| As required by written contract. | As required by written contract. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2004



POLICY NUMBER: GLO 131152

COMMERCIAL GENERAL LIABILITY
CG 20 12 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED –
# STATE OR POLITICAL SUBDIVISIONS – PERMITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

State Or Political Subdivision:

As required by written contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Section II – Who Is An Insured is amended to include as an insured any state or political subdivision shown in the Schedule, subject to the following provisions:

1. This insurance applies only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

2. This insurance does not apply to:

   a. "Bodily injury," "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality; or

   b. "Bodily injury" or "property damage" included within the "products-completed operations hazard".

    Copyright, Insurance Services Office, Inc., 1997       □

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Copyright, ISO Properties, Inc., 2003



**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

  Copyright, ISO Properties, Inc., 2003  CG 00 01 12 04

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way re-

spond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g.   Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

Copyright, ISO Properties, Inc., 2003

(5) "Bodily injury" or "property damage" arising out of:

   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

   (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

### h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

### i. War

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### j. Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Copyright, ISO Properties, Inc., 2003
CG 00 01 12 04



**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

Copyright, ISO Properties, Inc., 2003



**h.  Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i.  Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.  Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.  Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l.  Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.  Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.  Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or

neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o.  War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**COVERAGE C MEDICAL PAYMENTS**

**1.  Insuring Agreement**

a.  We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b.  We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2.  Exclusions**

We will not pay expenses for "bodily injury":

Copyright, ISO Properties, Inc., 2003

CG 00 01 12 04



a.  **Any Insured**

To any insured, except "volunteer workers".

b.  **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c.  **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d.  **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e.  **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f.  **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g.  **Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    a.  All expenses we incur.

    b.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    c.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

    e.  All costs taxed against the insured in the "suit".

    f.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or de-

posited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

    a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    b.  This insurance applies to such liability assumed by the insured;

    c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

    d.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

    e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

    f.  The indemnitee:

        (1)  Agrees in writing to:

            (a)  Cooperate with us in the investigation, settlement or defense of the "suit";

            (b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

            (c)  Notify any other insurer whose coverage is available to the indemnitee; and

            (d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

        (2)  Provides us with written authorization to:

            (a)  Obtain records and other information related to the "suit"; and

            (b)  Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be

deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing du-

ties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense

   Copyright, ISO Properties, Inc., 2003   CG 00 01 12 04

committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

    a. Medical expenses under Coverage **C**;

    b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a. Damages under Coverage **A**; and

    b. Medical expenses under Coverage **C**

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12

months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b. If a claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c. You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

    No person or organization has a right under this Coverage Part:

    a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

Copyright, ISO Properties, Inc., 2003

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will

undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

Copyright, ISO Properties, Inc., 2003
CG 00 01 12 04



c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations, written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

   (1) Goods or products made or sold by you in the territory described in a. above;

   (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

   (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   Copyright, ISO Properties, Inc., 2003

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

          Copyright, ISO Properties, Inc., 2003

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

     (1) Products that are still in your physical possession; or

     (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

       (a) When all of the work called for in your contract has been completed.

       (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

       (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

     Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

     (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

     (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

     (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "em-

ployee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

 Copyright, ISO Properties, Inc., 2003 CG 00 01 12 04



IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMPUTER RELATED AND OTHER ELECTRONIC PROBLEMS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability:

2. Exclusions

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of:

1. any actual or alleged failure, malfunction or inadequacy of:

a. any of the following, whether belonging to any insured or to others:
   (1) Computer hardware, including microprocessors;
   (2) Computer application software;
   (3) Computer operating systems and related software;
   (4) Computer networks
   (5) Microprocessors (computer chips) not part of any computer system; or
   (6) Any other computerized or electronic equipment or components; or

b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in paragraph a. above due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times, including the year 2000 and beyond.

2. any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or for any insured to determine, rectify or test for, any potential or actual problems described in paragraph 1.above.

Countersigned by _____
                        Authorized Representative

CFSGL 211 0503



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**

In consideration of the premium charged, it is hereby understood and agreed that this insurance does not apply to "bodily injury" or "property damage" which has first occurred , or alleged to have first existed, or begun to occur prior to the effective date of this policy, regardless of whether:

   (1) such "bodily injury" or "property damage" continues to occur, for any reason, on or after the effective date of this policy; and/or,

   (2) repeated or continued exposure to conditions, which caused such "bodily injury" or "property damage", occurs on or after the effective date of this policy, and causes additional, progressive or further "bodily injury" or "property damage".

This exclusion applies whether or not the insured's legal obligation to pay damages has been established as of the effective date of this policy.

CFSGL163 (0405)



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CROSS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY and COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (SECTION 1 – COVERAGES):

This policy does not apply to any "bodily injury", "property damage", or "personal and advertising injury" claims or "suits" brought by any Named Insured against any other Named Insured.

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEFINITION OF GROSS SALES

1.  **Definition**
    The gross amount charged by the Named Insured, concessionaires of the Named Insured or by others trading under the insured's named for:

    a.  All goods or products sold or distributed during the Policy Period;
    b.  Operations performed during the Policy Period; and
    c.  Rentals during the Policy Period;
    d.  Dues or fees during the Policy Period.

2.  **Inclusions**
    The following items shall not be deducted from gross sales as determined above:

    a.  Foreign exchange discounts;
    b.  Freight allowance to customers;
    c.  Total sales of consigned goods and warehouse receipts;
    d.  Trade or cash discounts;
    e.  Bad debts; and
    f.  Repossession of items sold on installments (amounts actually collected).

3.  **Exclusions**
    The following items shall be deducted from gross sales:

    a.  Sales or excise taxes which are collected and submitted to a governmental division;
    b.  Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;
    c.  Finance charges for items sold on installments;
    d.  Freight charges on sales if freight is charged as a separate item on customer's invoice; and
    e.  Royalty income from patent rights or copyrights which are not product sales.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

---

Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy.
Policy #_____
Effective on and after _____ 12:01 am standard time
Issued to _____

---

Countersigned by _____ Date:_____
· Authorized Representative

CFSGL186 (0106)



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DESIGNATED CONSTRUCTION PROJECT(S)
## GENERAL AGGREGATE LIMIT WITH CAP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

SCHEDULE

Designated Construction Projects:

**All projects where required by written contract.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

    1. A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

    However, the most we will pay under the Designated Construction Project General Aggregate Limit for all projects combined is $10,000,000.

    2. The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazards", regardless of the number of:

        a. Insureds;
        b. Claims made or "suits" brought; or
        c. Persons or organizations making claims or bringing "suits".

    3. Any payments made under COVERAGE A for damages shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

    i. Any payments made under COVERAGE A for damages shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

    2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

D. If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

E. The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

CFSGL118



POLICY NUMBER: GLO 131152

IL 09 85 01 08

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| |
|---|
| Terrorism Premium (Certified Acts) $      NOT COVERED |
| This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s): |
| |
| Additional information, if any, concerning the terrorism premium: |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.





## ENDORSEMENT

This endorsement, issued by **CRUM & FORSTER SPECIALTY INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## EARNED PREMIUM AND COMPOSITE RATE ENDORSEMENT

In consideration of Crum & Forster's acceptance of this insurance, the Named Insured hereby agrees that the minimum earned premium(s) due for this policy shall be calculated in accordance with the following:

1.  In the event of cancellation of this policy by the Named Insured after this policy has been in effect for more than 90 days, the return premium due, if any, shall be computed at a rate equal to ninety percent (90%) of the pro-rata unearned policy premium, subject however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy. Within the first 90 days of coverage under this insurance, a twenty-five percent (25%) absolute minimum earned premium is applicable, unless another higher premium is designated specifically as a minimum premium in the declarations.

2.  Failure by the Named Insured to remit premium payments when due shall be considered a request by the Named Insured for the Company to cancel this policy. Cancellation shall be computed in accordance with paragraph 1 above.

3.  In the event of cancellation of this policy by the Company for reasons other than nonpayment of premium, the earned premium for this policy shall be computed on a pro-rata basis, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy. A twenty five percent (25%) absolute minimum earned premium shall apply.

4.  The premium entered on the Declarations page of this policy as DEPOSIT PREMIUM is a provisional premium only and is subject to upward adjustment only in accordance with our rules, rates and the Premium Audit provisions of this policy. This policy has a Minimum Annual Premium that applies to the term of insurance as shown on the policy declarations. Unless otherwise stated below, the Minimum annual Premium is equal to the Deposit Premium as shown in the declarations page. Premium adjustments effected as a result of premium audits will be done after the policy is no longer in effect, but may be done by the Company while the policy is in effect.

    Minimum Annual Premium is 100% of the Deposit Premium as stated in the policy declarations.

Page 1 of 2

CFSGL185 (0608)



5.  The amount entered as DEPOSIT PREMIUM on the Declarations page of this policy has been computed on a composite rate basis for both "bodily injury" and "property damage" as follows:

| Exposure Base | Estimated Exposure | X | Composite Rate | = | DEPOSIT PREMIUM |
|---|---|---|---|---|---|
| Gross Sales | $235,639,000 | X | $1.80 | = | $424,152 |
| Uninsured Subcontractor Cost (Per CFSGL114) | TBD | X | $65.00 | = | TBD |

If the Exposure Basis is Payroll, then the Composite Rate shall be applied per thousand dollars of Payroll. If the Exposure Basis is Gross Sales, then the Composite Rate shall be applied per thousand dollars of Gross Sales. If the exposure is Cost, then the composite rate shall be applied per thousand dollars of cost. If the exposure is Units, then the composite rate shall be applied per unit.

Page 2 of 2

CFSGL185 (0608)



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EIFS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**

It is hereby understood and agreed that the endorsement CFSGL216 – Exclusion – Exterior Insulation Finish Systems (EIFS) applies to all applications with the exception of the application of (EIFS) over commercial grade steel or cement substructures, regardless of whether the building being constructed is intended for commercial or residential use.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

CFSGL 273 (0107)



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EIFS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

It is hereby understood and agreed that the endorsement SI 00 01 07 02 (coverage changes) – Exclusion – Exterior Insulation Finish Systems (EIFS) applies to all applications with the exception of the application of (EIFS) over cement exterior finish.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EIFS/DEFS EXCLUSION

This insurance does not apply to "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" arising directly or indirectly out of "your EIFS/DEFS product" or "your EIFS/DEFS work" as defined below.

"Your EIFS/DEFS product" means:

The following goods or products manufactured, sold, handled, distributed or disposed of by you, others trading under your name, or by any other or person or entity directly or indirectly for you or on your behalf:

1.  "Exterior insulation and finish system", defined as an exterior cladding or finish system used on any part of any structure, and consisting of:

    a.  rigid or semi-rigid insulation board made of expanded polystyrene or other materials; and
    b.  the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate; and
    c.  a reinforced base coat, or base coat and mesh; and
    d.  a finish coat, providing a surface texture, to which coat color may be added.

2.  "Direct exterior finish system", defined as an exterior cladding or finish system used on any part of any structure, and consisting of:

    a.  sheathing applied to a structure's framing or substrate; and
    b.  a reinforced base coat; or base coat and mesh; and
    c.  a finish coat providing surface texture, to which coat color may be added.

"Your EIFS/DEFS product" includes:
    i.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance of "your product"; and,
    ii. The providing of or failure to provide warnings or instructions.

"Your EIFS/DEFS work" means:
The following work or operations performed by you or by any person or entity working directly or indirectly for you or on your behalf:

1.  The design, manufacture, construction, fabrication, preparation, installation, application, maintenance, repair, including remodeling, service, correction or replacement of an "exterior insulation and finish system", or a "direct exterior finish system", or any part of either system, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.

Page 1 of 2

CFSGL 216



2. Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" or a "direct exterior finish system" is used on any part of that structure.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Policy # _____

Effective on and after _____12:01 am standard time.

Issued to _____

Countersigned by _____
                              Authorized Representative

Page 2 of 2

CFSGL 216



POLICY NUMBER: GLO 131152

COMMERCIAL GENERAL LIABILITY
CG 04 35 02 02

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $1,000,000 | each employee | $1,000 | each employee | $ Incl. |
| | $1,000,000 | aggregate | | | |
| Retroactive Date: | 03/31/87 | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to Section I – Coverages:

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph E. (Section III – Limits Of Insurance); and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to damages only if:

**(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

**(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

**(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **G.** of this endorsement.

**c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or



(2) When we make settlement in accordance with Paragraph 1.a. above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d. All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

## 2. Exclusions

This insurance does not apply to:

a. **Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b. **Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

c. **Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

d. **Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e. **Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f. **Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

g. **ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h. **Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i. **Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j. **Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

B. For the purposes of the coverage provided by this endorsement:

1. All references to Supplementary Payments – Coverages A and B are replaced by Supplementary Payments – Coverages A, B and Employee Benefits Liability.

2. Paragraphs 1.b. and 2. of the Supplementary Payments provision do not apply.

C. For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of Section II – Who Is An Insured are replaced by the following:

2. Each of the following is also an insured:

a. Each of your "employees" who is or was authorized to administer your "employee benefit program".

b. Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

  © ISO Properties, Inc., 2001  CG 04 35 02 02  ☐



4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

   b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D. For the purposes of the coverage provided by this endorsement, Paragraph 3. of Section II – Who Is An Insured does not apply.

E. For the purposes of the coverage provided by this endorsement, Section III – Limits Of Insurance is replaced by the following:

   1. Limits Of Insurance

      a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

         (1) Insureds;

         (2) "Claims" made or "suits" brought;

         (3) Persons or organizations making "claims" or bringing "suits";

         (4) Acts, errors or omissions; or

         (5) Benefits included in your "employee benefit program".

      b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

      c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

         (1) An act, error or omission; or

         (2) A series of related acts, errors or omissions

      negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

   2. Deductible

      a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

      b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

      c. The terms of this insurance, including those with respect to:

         (1) Our right and duty to defend any "suits" seeking those damages; and

         (2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

      apply irrespective of the application of the deductible amount.

      d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.



F. For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of Section IV – Conditions are replaced by the following:

2. **Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

   a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

      (1) What the act, error or omission was and when it occurred; and

      (2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

   b. If a "claim" is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

   a. **Primary Insurance**

      This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

   b. **Excess Insurance**

      (1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

         (a) No Retroactive Date is shown in the Schedule of this insurance; or

         (b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

      (2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

      (3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

      (4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

© ISO Properties, Inc., 2001

CG 04 35 02 02     □



c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

G. For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

EXTENDED REPORTING PERIOD

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

   a. This endorsement is canceled or not renewed; or

   b. We renew or replace this endorsement with insurance that:

      (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The "employee benefit programs" insured;

   b. Previous types and amounts of insurance;

   c. Limits of insurance available under this endorsement for future payment of damages; and

   d. Other related factors.

   The additional premium will not exceed 100% of the annual premium for this endorsement.

   The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

   The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

   Paragraph E.1.b. of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph E.1.c.

H. For the purposes of the coverage provided by this endorsement, the following definitions are added to the Definitions Section:

1. "Administration" means:

   a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   b. Handling records in connection with the "employee benefit program"; or

   c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.



2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

I. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the Definitions Section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

       a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

       b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

© ISO Properties, Inc., 2001
CG 04 35 02 02   ☐



COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

   **(1)** A person arising out of any:

     **(a)** Refusal to employ that person;

     **(b)** Termination of that person's employment; or

     **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

   **(1)** A person arising out of any:

     **(a)** Refusal to employ that person;

     **(b)** Termination of that person's employment; or

     **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 Copyright, Insurance Services Office, Inc., 1997



COMMERCIAL GENERAL LIABILITY
CG 21 73 01 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.



COMMERCIAL GENERAL LIABILITY
CG 22 79 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph 3. below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.



POLICY NUMBER: GLO 131152

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

Description And Location Of Premises Or Classification:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage C – Medical Payments does not apply and none of the references to it in the Coverage Part apply; and

2. The following is added to Section I – Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

© ISO Properties, Inc.,  2000



POLICY NUMBER: GLO 131152

COMMERCIAL GENERAL LIABILITY
CG 21 54 01 96

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description and Location of Operation(s):**

All Locations

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

Copyright, Insurance Services Office, Inc., 1994



COMMERCIAL GENERAL LIABILITY
CG 22 43 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

Copyright, Insurance Services Office, Inc.,  1997



COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2.**, *Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:*

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

B. The following exclusion is added to Paragraph **2.**, *Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:*

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

© ISO Properties, Inc., 2004



COMMERCIAL GENERAL LIABILITY
CG 21 67 04 02

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

B. The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C. The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

   © ISO Properties, Inc., 2001



ENDORSEMENT

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## INDEPENDENT CONTRACTOR(S) INSURANCE AGREEMENT

This endorsement modifies the insurance provided under the following:

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

---

It is agreed that the following Condition is added to SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS:

10.    a. It is agreed that any independent contractor(s) or subcontractor(s) utilized by you shall have Commercial General Liability insurance of the type described in the schedule below and with limits of insurance equal to or greater than those shown in the Schedule below.

b. It is further agreed that you will obtain a certificate of insurance from your independent contractor(s) or subcontractor(s), issued by an insurance company, or their parent company, rated in the most current annual edition of the A.M. Best Guide of not less than 'A minus' - Class Size VII, stating that you have been named as Additional Insured on the contractor(s) or subcontractor(s) insurance policy. The Additional Insured endorsement utilized must be 'ISO' form CG 2010 and CG 2037 (07/04 edition) or broader wording in your favor.

### SCHEDULE

### INDEPENDENT CONTRACTOR(S) OR SUBCONTRACTOR(S) INSURANCE SCHEDULE

Coverage: Commercial General Liability – Occurrence Form
LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit: | $1,000,000 |
| (Other than Products – Completed Operations) | |
| Products – Completed Operations Aggregate Limit: | $1,000,000 |
| Personal & Advertising Injury Limit: | $1,000,000 |
| Each Occurrence Limit: | $1,000,000 |

Page 1 of 2



Your failure to obtain the certificate(s) of insurance as described above will not invalidate the insurance provide to you by this policy or relieve us of our obligation to you under the terms of this policy except as stated below. However, for the purposes of determining the earned premium due us at audit, we will apply the rate shown for uninsured subcontractor costs on the 'EARNED PREMIUM AND COMPOSITE RATE ENDORSEMENT' against the amount of subcontracted work for which you did not obtain a certificate of insurance.

It is further agreed that Section IV – item 4. 'Other Insurance' and Section IV - item 5. 'Premium Audit' of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM is amended with the following additional conditions:

4. Other Insurance
    b. Excess Insurance

This insurance is excess over:

(1) Any other insurance available to you as an additional insured from any independent contractor(s) or subcontractor(s) or on any other basis, whether such insurance is primary, excess, or contingent.

The remainder of Condition '4'. remains unchanged.

5. Premium Audit

d. The Named Insured must keep copies of all certificates of insurance obtained from all independent contractor(s) or subcontractor(s) in accordance with the Independent Contractor(s) Insurance Schedule.

All other Terms and conditions of this insurance remain unchanged.

Page 2 of 2

CFSGL114 05 05



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## LEAD EXCLUSION

This policy does not apply to:

1.  "Bodily Injury", "Property Damage", or "Personal and Advertising Injury" in any way or to any extent arising out of the actual, alleged or threatened exposure to lead or any substance containing lead.

2.  "Economic Loss", "Diminution of Property", "Abatement Costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving lead or any substance containing lead.

3.  Any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any "Claim" or "Suit" arising out of or involving lead or any substance containing lead.

For the purpose of this exclusion, the following additional terms are defined:

"Abatement Costs" mean any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal, replacement, or treatment.

"Diminution of Property" means the diminishing or lessening in value of property.

"Economic Loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture, utilization, or existence of a substance or product.

"Equitable Relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

---

Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Policy No. _____

Effective on and after _____  12:01a.m. standard time

Issued to _____

---

Countersigned by: _____

Authorized Representative



Endorsement

## NOTICE OF ACCIDENT

It is agreed that where the insured reports the occurrence of an accident to its employers liability, automobile, disability carrier or any other liability carrier which later develops into a claim, for which coverage is provided by this policy, failure to report such accident to this company at the time of occurrence shall not be deemed in violation of general conditions entitled "Notice To Company" upon the express distinct understanding and agreement, however, that the insured shall notify this company of the aforesaid accident as soon as reasonably practicable after becoming aware that said accident is one to which this policy rather than an employer's liability, automobile, disability or any other liability policy would apply.

## KNOWLEDGE OF OCCURRENCE

It is agreed that knowledge of an occurrence by the agent, servant or employee of the insured shall not in itself constitute knowledge by the insured unless an executive officer of the insured's corporation shall have received such notice from its agent, servant or employee.

## UNINTENTIONAL ERRORS OR OMISSIONS

It is agreed that failure of the insured to disclose all hazards existing as of the inception date of the policy shall not prejudice the insured with respect to the coverage afforded by this policy provided such failure or any omissions is not intentional



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTVE AND HIGHWAY LIABILITY POLICY NEW YORK
DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

 A . Under any Liability Coverage, to "bodily injury" or "property damage:"
   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

 B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

 C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;



(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property threat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic, or explosive properties;

"Nuclear material" means "source material," "Special nuclear material," or "by-product material;"

"Source material," "special nuclear material," and "by-product material;" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing, or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

OCCUPATIONAL DISEASE EXCLUSION

This policy does not apply to "Bodily Injury" caused by "Occupational Disease" to any employee of any "Insured" which arose out of and in the course of his employment by any "Insured" or to any obligation of any "Insured" to indemnify because of liability arising out of such occupational disease.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

---

Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Policy Number: _____

Effective on and after _____ 12:01 am standard time.

Issued to _____

---

Countersigned by _____
                        Authorized Representative

CFSGL226 (0999)



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## GENERAL CHANGE ENDORSEMENT

### "PRIMARY/NON-CONTRIBUTORY" ENDORSEMENT

Insured Name: Stiles Corporation

Producer Code: 81256
Producer: Westrope Associates

Endorsement Effective Date: 06/30/08

IT IS AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THIS
POLICY FOR THE BENEFIT OF THE ADDITIONAL INSURED SHALL
BE PRIMARY INSURANCE AS RESPECTS ANY CLAIM, LOSS OR
LIABILITY ARISING DIRECTLY FROM THE NAMED INSURED'S
OPERATIONS AND ANY OTHER INSURANCE MAINTAINED BY THE
ADDITIONAL INSURED SHALL BE EXCESS AND NON-CONTRIBUTORY
WITH THE INSURANCE PROVIDED HEREUNDER.

THIS ENDORSEMENT APPLIES WHERE REQUIRED BY WRITTEN CONTRACT.

All other Terms and Conditions of the Policy remain unchanged.

CFSGL120  (0106)



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
## SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**

It is understood and agreed that such Insurance as provided by this policy is modified and subject to the following provisions:

1.  Our total limit of liability as stated in the policy declarations shall apply in excess of the retained limit (herein called the Self-Insured Retention) as stated in the endorsement, and the Named Insured agrees to assume this retained limit:

Self Insured Retention (SIR):

| Amount and Basis of SIR | | Coverage |
|---|---|---|
| $ 100,000 | per occurrence | Bodily Injury Liability and/or Premises/Operations Property Damage Liability, Personal Injury and/or Advertising Injury Liability, and Medical Payments, Products-Completed Operations Property Damage Combined* |
| | or | |
| $ N/A | per occurrence | Bodily Injury Liability, and/or Premises/Operations Property Damage Liability, Personal Injury and/or Advertising Injury Liability Combined * |
| $ N/A | per occurrence | Products-Completed Operations Property Damage |

*This includes "personal injury" and "advertising injury" or "personal and advertising injury" depending on the coverage actually provided in the policy to which this endorsement applies.

Page 1 of 5

CFSGL164a (0505)



2.    The above limits apply as follows:

**Per Occurrence Basis:** If the Self-Insured Retention limit indicated in the schedule above is on a Per Occurrence basis, the Self-Insured Retention applies as follows:

1.  Under Bodily Injury and/or Property Damage Liability and Medical Payments combined, to all damages and medical expenses because of "bodily injury" and "property damage" as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence";

2.  Under Personal and Advertising Injury Liability, combined, to all damages because of "Personal and Advertising Injury" combined as the result of any one offense regardless of the number of persons or organizations who sustain damages because of that offense.

**Per Claim Basis:** If the Self-Insured Retention limit indicated in the schedule is on a Per Claim basis, the Self-Insured Retention applies as follows:

1.  Under Bodily Injury and/or Property Damage Liability and Medical Payments, combined, to all damages and medical expenses sustained by any one person or organization because of "bodily injury" and "property damage", combined, as the result of any one "occurrence".
2.  Under Personal and Advertising Injury Liability, combined, to all damages arising out of "personal injury" and "advertising injury" sustained by any one person or organization because of any one offense.

3.  If damages are claimed for care, loss of services or death resulting at ay time from "bodily injury", a separate Self-Insured Retention will be applied.

3.    Our obligation to pay damages and defend claims or "suits" under this policy applies only when the amount of the Self-Insured Retention has been exhausted by the insured's payment of damages and or "Claims Expense" that would be covered by this policy but for the application of the Self-Insured Retention.

The Insured shall have the obligation to provide, at his own expense, proper defense and investigation of any claim or "suit" and to accept any reasonable offer of settlement within the Self-Insured Retention. The Insured's obligation to provide for his own defense is terminated upon the exhaustion of the Self-Insured Retention referenced above. **Compliance with this clause is a condition precedent for coverage under this policy. In the event of the failure of the Insured to comply with this clause, no loss, cost or expense shall be payable by the Company.**

CFSGL164a (0505)



4.   For the purposes of this endorsement, the term "Claims Expense" will include all fees, costs, charges and expenses generated by attorneys designated to represent the insured, and all other costs, charges and expenses incurred in the investigation, adjustment, settlement, arbitration, defense or appeal of any claim to which this insurance otherwise applies. "Claims Expense" will not include the cost of investigating or adjusting a claim by salaried employees of the insured, the insured's *third party administrator (hereafter called TPA), wages or salaries of any employees* of any insured and/or operating expense of any insured.

5.   In the event of a claim or claims arising which appear likely to exceed the Self-Insured Retention, no costs, other than adjusting expenses, shall be incurred by the Insured without the written consent of the Company. Furthermore, no insureds will, except at their own cost, make a payment, assume any obligation, or incur any expense, other than that for first aid, in excess of the "Self Insured Retention" limit without our consent.

6.   We shall have the right in all cases, but not the obligation, to assume control of the investigation, defense and/or settlement of any claim or "suit" and upon written request from us the Insured shall pay directly any expense or loss incurred by us in the investigation, defense, settlement and/or satisfaction of judgment of any claim or "suit" within the Self-Insured Retention.

7.   Amended Section IV - Commercial General Liability Conditions 2 - "Insured's Duties in the Event of Occurrence, Claim or Suit" is eliminated from the Policy in its entirety and the following wording substituted therefore:

   a)   The Insured or his TPA shall provide us with loss runs on a quarterly basis of all claims which may affect this policy. Such reports shall include the name of the claimant, date of loss, description of loss, type of injury, the amount of paid loss and expense and the estimated future amount of loss and expense. Each report is to be submitted with twenty (20) days following the end of each quarterly period and they will apply in addition to the items listed in Paragraph 5(c) below.

   b)   The Insured or the TPA shall report promptly to us each claim or loss for which the estimated amount of net loss is 50% or more of the Self-Insured Retention listed above.

   c)   The Insured or the TPA shall report all cases of serious injury which, notwithstanding consideration of liability or coverage might involve this insurance but not limited to the following:

Page 3 of 5

CFSGL164a (0505)



1) Cord injury - paraplegia, quadriplegia;
2) Amputations - requiring a prosthesis;
3) Brain damage affecting mentality or central nervous system such as permanent disorientation, behavior disorder, personality change, seizures, motor deficit, inability to speak (aphasia), hemiplegia or unconsciousness (comatose);
4) Blindness;
5) Burns - involving over 10% of body with third degree, or 30% of body with second degree;
6) Multiple fractures - involving more than one member or non-union;
7) Fracture of both heel bones (fractured bilateral or calcis);
8) Nerve Damage causing paralysis and loss of sensation in arm and hand (brachial plexus nerve damage);
9) Massive internal injuries affecting body organs;
10) Injury to nerves at base of spinal canal (Cauda Equina) or any other back injury resulting from incontinence of bowel and/or bladder;
11) Fatalities;
12) Any other serious injury, which, in the judgment of the Insured, might involve the Company;
13) Rape.
14) All construction defect claims.

d) The insured shall also notify us of:
(1) A potential or actual error or omission in the handling of a claim by the insured or its claim service administrator.
(2) A potential or actual conflict of interest between any insured, its claim service administrator or us.

**It is agreed that the above reporting requirements shall be a condition precedent to coverage. Notwithstanding the above provisions the responsibility to guarantee proper reporting remains that of the Insured. The failure of the insured to comply with the reporting requirements may result in a denial of coverage under the policy.**

e) The Insured must cooperate with us and, upon our request, assist in the investigation, settlement or defense of the claim or "suit". Assist us, upon request, in the enforcement any right of contribution or indemnity against any person or organization who may be liable to the Insured because of liability with respect to which insurance is afforded under the policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining witnesses.



8.     The insured shall at all times:

    a)     Give to us, or our duly appointed representatives, such information, assistance, and signed statements as we may require, and

    b)     Assist in the defense of any claim without charge to us.

9.     The insured shall indemnify and hold us harmless from and against any and all damages, costs and expenses, including but not limited to adjusting expenses and attorneys' fees incurred by us in the investigation, defense, settlement and/or satisfaction of judgment of any claim or "suit" within the Self-Insured Retention.

    The Insured shall further indemnify and hold us harmless from and against any and all costs incurred by us, including but not limited to the reasonable value of our employee services and attorneys' fees incurred in the enforcement of this agreement.

**The following SECTION IV Conditions are replaced as indicated:**

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Commercial General Liability Coverage Part, however, coverage will apply only to covered liability in excess of the Self Insured Retention. In the event the insured is unable to pay the Self-Insured Retention for any reason including bankruptcy, insolvency or any other financial impairment, this policy will apply as though the Self-Insured Retention were available and collectible.

### 4. Other Insurance

This insurance is excess of all other insurance, except insurance specifically purchased to apply in excess of this insurance, and shall not contribute with any other insurance. This insurance is excess of the Self Insured Retention in all circumstances. The Self Insured Retention can only be reduced or exhausted by your payment of settlements or judgments for damages which would otherwise be covered under the terms of this insurance. It cannot be reduced or exhausted by other insurance that may be available to you unless the other insurance was purchased by you for the specific purpose of reducing or replacing the Self Insured Retention.

### 8. Transfer Of Rights Of Recovery Against Others To Us.

If the insured has rights to recover all or part of any payment we have made under the Commercial General Liability Coverage Part, including payments made under this endorsement, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.



## SURPLUS LINES FILING AND POLICY ISSUANCE CRITERIA

### SERVICE OF PROCESS CLAUSE

The Commissioner, Director, or Superintendent of Insurance of the State (or other office specified for the following purpose) in the State of Florida is hereby designated as the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit, or proceeding arising out of this policy. The Company further designates:

| | |
|---|---|
| Name: | Mary Jane Robertson |
| Name of Company or Firm: | Crum & Forster Specialty Insurance Co. |
| Mailing Address: | 305 Madison Avenue<br>Morristown, NJ 07962 |

As its agent in New Jersey to whom such process shall be forwarded by the Commissioner, Director, or Superintendent of Insurance.

ALL STAMPS PLACED ON POLIY OR OTHER DOCUMENTS MUST BE IN RED INK

CFSGL254



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## STATE OPERATIONS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

It is hereby understood and agreed that this policy does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of "your work" or out of any insured's work, operations or contractual obligations in the following states:

     Alaska
     Arizona
     California
     Hawaii
     Nevada
     New York
     Oregon
     South Carolina

This exclusion applies regardless of whether such work or operations are conducted by the insured or on behalf of the insured or whether the operations are conducted for the insured or for others. This exclusion applies to all work and operations whether completed or in progress.

All other terms and conditions of this policy remain unchanged.

CFSGL158 (1204)





THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SUBSIDENCE AND EARTH MOVEMENT AND
## EARTH PRESSURE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

It is understood and agreed that such insurance as provided by this policy is modified and subject to the following provisions:

1. The following exclusion is added to Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I – Coverage B Personal and Advertising Injury Liability:**

   This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury", or to any defense costs or Supplementary Payments directly or indirectly arising out of, caused by, resulting from, contributed to or aggravated by "Subsidence and Earth Movement" or "Earth Pressure." Such loss or damage is excluded regardless of any other cause or event, including any product, work or operation provided or performed by or on behalf of any Insured, that contributes concurrently or in any sequence to the loss or damage.

2. The following definitions are added to SECTION V – DEFINITIONS:

   "Subsidence and Earth Movement" means any actual or threatened movement of earth or land, and/or any components of earth or land, including but not limited to, subsidence, settling, sinking, falling away, caving in, shifting, eroding, mud flow, rising, tilting, bulging, cracking, shrinking or expansion of foundations, walls, roofs, floors, or ceilings, or any other movement of land or earth.

   "Earth Pressure" means pressure exerted by land or earth, whether or not combined with water.

All other terms, conditions, exclusions and limits provided in the policy continue to apply.

CFSGL 235 03 08



COMMERCIAL GENERAL LIABILITY
CG 21 55 09 99

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f. **Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".